United States Court of Appeals,

Fifth Circuit.

No. 92–8065

Summary Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael Edward NICHOLS, Defendant-Appellant.

Nov. 24, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Appellant Nichols contends that his retrial following a mistrial declared by the district court *sua sponte* will violate his constitutional protection against double jeopardy. We disagree and affirm the trial court's denial of the motion to dismiss the superseding indictment.

Appellant and his wife were on trial in early January, 1992 on charges of conspiracy and attempt to manufacture methamphetamine when the prosecutor elicited evidence that explosives were found at the place of manufacture. Counsel for appellant objected to this testimony as violating his motion *in limine,* and the court, after colloquy with the government, apparently accepted defense counsel's charge that this evidence was highly prejudicial and irrelevant and declared a mistrial. The government contested this decision, analogizing the admissibility of explosives to firearms, which had been declared "tools of the drug trade" in many cases. The government also suggested that explosives are often used as booby-traps to protect drug manufacturing operations, although it had no evidence that they were so used in this case. The court was unmoved by the government's arguments and by its attorneys' further requests to look up and produce authorities for the court following the lunch recess. During this discussion, counsel for defendant remained silent. Court-appointed counsel for appellant questioned only how he would be able to subpoena witnesses for a second trial, and the court obliged him by keeping the subpoenas open for a closely following

second trial date.

Just before the second trial was to begin, appellant moved to dismiss the government's superseding indictment, asserting that the prosecutor had provoked the mistrial and therefore forfeited the government's right to challenge a double jeopardy defense. *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). After hearing argument on this issue, the court concluded that the prosecution had not deliberately elicited evidence of explosives in order to spawn a mistrial, and appellant's motion was denied. He has properly sought an interlocutory appeal.

Nichols contends that the district court erred in denying his motion to dismiss. This court affirms

> the factual findings of the district court unless they are clearly erroneous.... [O]rdinarily the denial of a defendant's motion to dismiss with prejudice is not an appealable final decision. Courts of appeal do have jurisdiction, however, to review the denial of a motion to dismiss based on the double jeopardy clause.

*U.S. v. Weeks,* 870 F.2d 267, 269 (5th Cir.), *cert. denied,* 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989) (citations omitted); *see also United States v. Miller,* 952 F.2d 866, 872 n. 5 (5th Cir.), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992).

"[T]he double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn." *U.S. v. Bauman,* 887 F.2d 546, 549 (5th Cir.1989), *cert. denied,* 493 U.S. 1077, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990). Double jeopardy may be waived by consent; also, "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution." *Id.* (citations omitted). Moreover, "a retrial following a *sua sponte* declaration of mistrial over a defendant's objection is not prohibited under the fifth amendment where there exists "manifest necessity' for a mistrial." *Id.* (citation omitted).

Nichols contends that he neither moved for a mistrial nor consented to it. He argues that there must be no retrial because "no manifest necessity existed when the district court declared the mistrial."

Even though the district court ostensibly "granted" the motion for the mistrial, our examination of the record supports Nichols' contention that he did not move for a mistrial on this point. The question then becomes whether Nichols consented to the *sua sponte* declaration. We

conclude he impliedly consented.

Some courts have held that "[c]onsent need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial." *U.S. v. Goldstein,* 479 F.2d 1061, 1067 (2nd Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973) (citations omitted); *see also United States v. Phillips,* 431 F.2d 949, 950 (3d Cir.1970) (consent inferred from defendant is failure to object to mistrial). This court has not previously explicitly adopted the implied-consent analysis. However, citing *Goldstein,* this court has stated in dictum that "[w]hen the defendant moves for a mistrial or *does not object timely to the declaration of a mistrial,* his double jeopardy claim may be vitiated by his consent." *U.S. v. Gordy,* 526 F.2d 631, 635 n. 1 (5th Cir.1976) (emphasis added). We now adopt *Goldstein* and the dictum in *Gordy* as a rule for this circuit.

Trying to explain his failure to object, Nichols asserts that the mistrial came as a total surprise. He argues that the district court "jumped the gun" in declaring the mistrial, and counsel did not have an opportunity to respond without interrupting a federal judge. The record belies this assertion. The Government entered into two discussions with the district judge regarding the propriety of permitting the testimonial evidence of explosives. Defense counsel made no attempt to object to the mistrial or to participate in the discourse. The only inquiries by defense counsel concerned available funds for re-subpoenaing witnesses and scheduling conflicts in a second trial.

As further justification for his failure to object, Nichols makes several references to counsel's inexperience as a criminal lawyer. However inexperienced, counsel was not unfamiliar with the concept of a mistrial. Earlier in the case, counsel had moved for a mistrial on grounds that the jury had seen the defendant in shackles; and the district court had denied the motion. Judging from counsel's tenacity and thoughtfulness, we believe he protests too much his inexperience.

Further, Nichols contends that his prompt action in filing a motion to dismiss eight days after the mistrial evinced a lack of consent. This argument is unconvincing. Nichols did not file a motion to dismiss the original indictment in response to the mistrial. To the contrary, he implied his consent to the retrial by failing to object to the mistrial and by rescheduling the new trial. Nichols filed the motion to dismiss only after receiving notice of the superseding indictment, which charged two

additional counts.

Nichols asserts that his silence should not be deemed to be a waiver of his constitutional right to be free from double jeopardy. The Supreme Court has, however, "rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *U.S. v. Dinitz,* 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 1080 n. 11, 47 L.Ed.2d 267 (1976).

Under the theory of implied consent, Nichols' failure to object demonstrates acquiescence. We therefore need not reach the contention that there was no manifest necessity for the court to declare a mistrial. *See Dinitz,* 424 U.S. at 606–07, 96 S.Ct. at 1079.

The only other issue properly before us is whether the government deliberately elicited evidence of explosives from its witness so that it could provoke a mistrial. Nichols argues that the government was motivated to abort the first trial because it was unprepared to try the case so soon after Christmas holidays, because his defense had been successful up to that point in trial, and because the mistrial afforded the government a chance to seek re-indictment of Nichols and expand the charges against him. In essence, he contends, the prosecutor subverted the first trial in order to get another, better crack at conviction at a second trial. In *Oregon v. Kennedy,* the Supreme Court held that prosecutorial misconduct tantamount to harassment or overreaching does not bar retrial unless it is *intended* to thwart a defendant's double jeopardy protection. 456 U.S. at 676, 102 S.Ct. at 2089.[1] The district court heard and rejected Nichols' arguments, and we cannot say that its conclusion is clearly erroneous. The court found that some legal argument supported the government's attempted introduction of the evidence of explosives at the manufacturing site,[2] and that in any event the government did not clearly foresee that such evidence would be revealed by the agent

_____

[1]It is possible that the reasoning of *Oregon v. Kennedy,* has been undermined by the Court's later decision in *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), but we do not need to reach that question here.

[2]Although we do not review the court's grant of a mistrial on its merits because that question is immaterial on the facts of this case, we note that the district court may have acted too hastily in declaring a mistrial rather than first seeking the view of defense counsel and considering the issues of admissibility of the evidence, or possible limiting instructions, more carefully.

in violation of the motion *in limine*. Further, the government argued vigorously *against* the granting of a mistrial. Because there is no evidence that the prosecutor intended to terminate the first trial, there is no double jeopardy bar to Nichols' retrial. *Oregon v. Kennedy,* 456 U.S. at 679, 102 S.Ct. at 2091.

For the foregoing reasons, the judgment of the district court is AFFIRMED.