REVISED, April 29, 1998

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 97-30130

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ERIC CARMOUCHE,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

April 14, 1998

Before GARWOOD, DUHÉ, and DeMOSS, Circuit Judges.

PER CURIAM:

Eric Carmouche pleaded guilty to unlawful possession of a short barrel shotgun in violation of 26 U.S.C. § 5861(d). Carmouche was sentenced to 27 months imprisonment to be followed by a 24 month period of supervised release. Carmouche appeals his sentence. We affirm.

## BACKGROUND

Police searched Carmouche's rural property after receiving a tip that Carmouche was involved in the disappearance of a cow. Two

separate searches uncovered, not only the remains of the dead cow, but also a United States Army blasting machine, a .45 caliber automatic handgun, a sawed off shotgun accompanied by an extra barrel less than 18 inches in length, a .223 caliber rifle accompanied by parts to make it fully automatic, bomb detonation cords, a blasting cap, and numerous boxes of small ammunition and gun powder. Carmouche was subsequently charged with unlawful possession of: (1) a machine gun; (2) a short barrel shotgun; and (3) an explosive device.

Carmouche agreed to plead guilty to count 2, which alleged unlawful possession of a short barrel shotgun, as defined in 26 U.S.C. § 5845(a)(1) and (d) and in violation of 26 U.S.C. § 5861(d). Counts 1 and 3 were dismissed pursuant to Carmouche's plea agreement. Carmouche was sentenced using a base offense level of 18 because his offense involved a firearm defined in 26 U.S.C. § 5845(a). *See* U.S.S.G. § 2K2.1(a)(5). The district court imposed a one-level increase because the offense involved three weapons, *see* U.S.S.G. § 2K2.1(b)(1)(A), and a two-level increase because the offense involved a "destructive device," *see* U.S.S.G. § 2K2.1(b)(3). The district court also granted a three-level reduction for acceptance of responsibility. Thus, Carmouche was sentenced using a net base offense level of 18. On November 12, 1996, the district court entered judgment against Carmouche.

Six days later, on November 18, 1997, Carmouche filed a pleading entitled "Motion to Correct Sentence Pursuant to Rule 35(c) Fed. R. Crim. P. and for Evidentiary Hearing." Carmouche

argued that the district court erred by: (1) imposing sentence for possession of a shotgun barrel, rather than a shotgun; (2) applying the 1995 version of the sentencing guidelines; (3) imposing a three-level adjustment for the possession of other firearms and explosive devices; and (4) refusing to depart downward. More than sixty days later, on January 22, 1997, the district court entered an order denying Carmouche's November 18 motion. The following day, Carmouche filed a notice appealing his sentence and the district court's January 22 order denying the November 18 motion to correct his sentence.

On appeal, Carmouche urges again the arguments presented in the November 18 motion to correct his sentence. The government responds that this Court is without jurisdiction because Carmouche failed to file a timely notice of appeal. Prior to oral argument, the government also filed a motion to dismiss for lack of jurisdiction, which has been carried with the case.

## DISCUSSION

### 1. Appellate Jurisdiction

The threshold issue in this case, and one that is determinative of our jurisdiction, is whether Carmouche's November 18 motion to correct his sentence suspended the ten-day time period for filing an appeal. *See* FED. R. APP. P. 4(b). We conclude that it did and that we therefore have jurisdiction to entertain Carmouche's appeal. *See **United States v. Moya***, No. 94-10907 (5th Cir. July 25, 1995)(unpublished), and 5th Cir. R. 47.5.3.

*Moya* construed a motion labelled as a Rule 35(c) motion as "one of the species of motions for reconsideration" which suspend the running of the 10-day period of FRAP 4(b). *See Moya*, No. 9410907, at 3-4. Although unpublished, *Moya* is binding precedent in this Circuit because it was issued before January 1, 1996. *See* 5th Cir. R. 47.5.3. Carmouche filed his November 18 motion, captioned as authorized by Federal Rule of Criminal Procedure 35(c), six days after the court entered judgment and thus within the time period allowed for filing an appeal. Once filed, that motion prevented the running of the 4(b) period, and extended the time for filing an appeal until the district court disposed of that motion on January 22, 1997. Therefore, Carmouche's notice of appeal, which was filed one day after the district court denied his motion, was timely. We have jurisdiction to consider the merits of Carmouche's appeal.

### 2. The Shotgun Barrel

Carmouche pleaded guilty to count 2, which charged possession of a short barrel shotgun, as defined in 26 U.S.C. § 5845(a)(1) and (d) and in violation of 26 U.S.C. § 5861(d). Carmouche was sentenced using sentencing guideline § 2K2.1, the guideline applicable when the firearm is one defined by § 5845(a). Carmouche argues on appeal that his conviction for violation of § 5861(d) is invalid because the detached barrel found at his house does not meet the technical definition given for a short barrel shotgun in

4

18 U.S.C. § 5845(a)(1) and (d). As a result, Carmouche contends that the district court's application of guideline § 2K2.1(a)(5) was error.

By disputing the district court's decision that Carmouche's offense involved a § 5845(a) firearm, and the district court's subsequent reliance upon guideline § 2K2.1(a)(5), Carmouche hopes to reap the benefit of § 2K2.1(b)(2). Section 2K2.1(b)(2) specifies a total base offense level of six when the firearm is possessed solely for lawful sporting purposes or collection. The favorable offense level provided in § 2K2.1(b)(2) is made expressly unavailable when the offense involves a firearm defined in § 5845(a). U.S.S.G. § 2K2.1 application note 10.

Carmouche's plea is supported by a sufficient factual basis. The parties' joint Rule 11(f) factual stipulation recites that the police found the shotgun and the shotgun barrel, which was "made to fit the shotgun" and was less than thirteen inches long, "[i]n close proximity." The PSR reports that Carmouche knowingly, intentionally and unlawfully possessed a shotgun with a barrel length of twelve and one-half inches. Carmouche received a three-level reduction in his base offense level because he accepted responsibility for the relevant conduct described in the PSR. Of equal importance, Carmouche pleaded guilty to the indictment as charged and has not formally challenged his plea, either in the district court or in this Court, where his notice of appeal is limited to sentencing issues. The district court did not err by

applying § 2K2.1(a)(5), the guideline applicable to Carmouche's offense, or by refusing to apply § 2K2.1(b)(2) to reduce Carmouche's sentence.

### 3.    The Applicable Guidelines

Carmouche next contends that the district court erred by applying the 1995 version of the sentencing guidelines instead of the 1993 version, which the plea agreement stated would be used to derive Carmouche's sentence.  Carmouche did not object to the district court's application of the 1995 version until he filed his motion for reconsideration of sentence.

The district court's application of the 1995 guidelines was not reversible error.  Although the plea agreement recites that the 1993 guidelines will be used, not every breach of a plea agreement requires reversal. *United States v. Hooten*, 942 F.2d 878, 884 (5th Cir. 1991).  The guidelines in effect at the time of sentencing are to be used unless application of the current guidelines would implicate the ex post facto clause. U.S.S.G. § 1B1.11.  Carmouche claims that the ex post facto clause is implicated here because § 2K2.1(b)(2), providing a base offense level of six when firearms are possessed for hunting or collection purposes, was deleted from the guidelines in 1994.  Carmouche is incorrect.  Section 2K2.1(b)(2) appears in identical form in both the 1993 and 1995 version of the guidelines.  Indeed, an examination of the 1993 and 1995 versions of the guidelines yields the conclusion that the provisions are substantively identical for all purposes relevant to this appeal.  There are, therefore, no ex post facto concerns

6

requiring application of the 1993 guidelines. In addition, because Carmouche was not prejudiced by the district court's application of the 1995 guidelines, any error was also harmless.

**4.    Failure to Hold Evidentiary Hearing**

The district court increased Carmouche's base offense level by two levels because the offense involved "destructive devices" seized from Carmouche's house. *See* U.S.S.G. § 2K2.1(b)(3). The guidelines define destructive devices as including any of a variety of destructive or explosive items, and any firearm that will, or can be readily converted to, "expel a projectile by the action of an explosive or other propellant," or any combination of parts designed or intended for converting a device into a destructive device. U.S.S.G. § 2K2.1 application note 4. On appeal, Carmouche argues that the district court erred by failing to grant an evidentiary hearing to explore Carmouche's contention that the explosive devices seized from his home belonged to another person, who was storing the items at Carmouche's house.

An assortment of firearms and explosive materials were found at Carmouche's residence, including explosive RDX, explosive FFGg black powder, Hercules Red Dot double base explosive shotgun powder, Winchester Western explosive double base powder, and a section of explosive detonating cord .20 inches in diameter containing explosive PETN. Even if some of these items belonged to another individual, the subject offense is possession and there is no dispute that the items were found in Carmouche's possession at his rural residence, where he lived alone. Additionally, Carmouche

was required to accept responsibility for all relevant conduct, including possession of the additional firearms and explosive devices, in order to receive a three level reduction for acceptance of responsibility. Having reviewed the record, we cannot conclude that the district court erroneously failed to conduct an evidentiary hearing to consider whether Carmouche had both title and possession of these dangerous destructive devices.

### 5. Failure to Depart

Carmouche contends that the district court erred by refusing to depart downward because this case falls outside the heartland of those offenses contemplated by § 2K2.1. *See* U.S.S.G., Ch. 1, Pt. A, 4(b).

A district court's refusal to grant a downward departure is not reviewable on appeal unless the refusal is a violation of law. *United States v. Palmer*, 122 F.3d 215, 222 (5th Cir. 1997). We have previously held that a refusal to depart violates the law when the district court's refusal is based upon the mistaken belief that the court is without authority to depart. *Id*. at 222. We have no jurisdiction, however, when the district court's refusal to depart is based upon the determination that departure is not warranted on the facts of the case. *Id*.

The district court concluded the sentencing hearing with the remark that it did not consider Carmouche to be a menace, but that it had "no choice" with respect to Carmouche's sentence because the government had not filed a motion requesting departure. Thus, Carmouche maintains that the district court failed to recognize its

authority to depart on the theory that Carmouche's conduct was outside the heartland defined by the applicable guidelines.

We disagree. The district court's concluding remarks were not directed to any particular objection or argument of the defendant. With respect to Carmouche's "heartland" argument, the district expressly found that there was "no reason to depart from the sentence called for by the application of the guidelines inasmuch as the facts as found are of a kind contemplated by the Sentencing Commission." We have no jurisdiction to review the district court's determination that a departure was not warranted on the facts of Carmouche's case. *Id.*

For the foregoing reasons, the government's motion to dismiss is DENIED and the district court is in all respects AFFIRMED.

ENDRECORD

DeMOSS, Circuit Judge, specially concurring:

The members of the panel are in agreement that we have appellate jurisdiction to consider the merits of Carmouche's appeal because his November 18 motion suspended FRAP 4(b)'s ten-day time period for filing an appeal until such time as the district court ruled on that motion. We disagree, however, about why Carmouche's motion had that effect. My colleagues have written separately to emphasize that they feel reluctantly bound by this Court's

unpublished disposition in *United States v. Moya*, No. 94-10907 (5th Cir. July 25, 1995). They have urged the en banc Court to reconsider its precedent in *Moya*. I write separately because I do not read *Moya* to decide any bold new issue of law that requires the Court's en banc attention. Rather, *Moya* is premised upon sound Fifth Circuit authority, authority which I believe to be rightly decided and which I am not inclined at this juncture to question.

## FRAP 4(b) AND THE *HEALY* DOCTRINE

Federal Rule of Appellate Procedure 4(b) provides that an appeal must be filed within ten days after the entry of judgment. FED. R. APP. P. 4(b). That time period can be suspended, however, by the timely filing of certain post-judgment motions within the time period allowed for the filing of a notice of appeal. FRAP 4(b) includes a list of rule-based motions that effectively suspend the ten-day time period for filing an appeal. *Id*. In addition to those rule-based motions listed in FRAP 4(b), the Supreme Court allows a common law "motion for reconsideration" to suspend the time period for filing an appeal in a criminal matter. *E.g.*, *United States v. Healy*, 84 S. Ct. 553, 556-57 (1964). The *Healy* doctrine is applied notwithstanding the absence of any statutory or rule-based authority for allowing the judicially created motion for reconsideration to have a suspensory effect. *United States v. Dieter*, 97 S. Ct. 18, 19-20 & n.3 (1976); *Healy*, 84 S. Ct. at 556;

*United States v. Brewer*, 60 F.3d 1142, 1143-44 (5th Cir. 1995), *corrected without substantive change*, 1997 WL 447234 (5th Cir. 1995); *United States v. Greenwood*, 974 F.2d 1449, 1466 (5th Cir. 1992). Rather, Supreme Court decisions premise the *Healy* doctrine upon long-standing criminal practice and the judicial efficiency achieved by allowing the district court to correct possible errors prior to a time consuming and potentially unnecessary appeal. *Dieter*, 97 S. Ct. at 19-20; *Healy*, 84 S. Ct. at 556; *Greenwood*, 974 F.2d at 1466-67.

Our Court has been "quite permissive about what qualifies as a 'motion for reconsideration.'" *Id*. at 1466. When making that determination, the suspensory effect of a particular motion does not depend upon the caption selected by the movant. *E.g.*, *Dieter*, 97 S. Ct. at 19 ("[i]t is true that the Government's post-judgment dismissal motion was not captioned a 'petition for rehearing,' but there can be no doubt that in purpose and effect it was precisely that"); *Moya*, No. 94-10907 at 3-4 (5th Cir. July 25, 1995) (construing criminal defendant's Rule 35(c) motion to be a motion for reconsideration); *Greenwood*, 974 F.2d at 1465-66 (construing government's motion for resentencing to be a motion for reconsidera-tion). To the contrary, "any request, however phrased, that a district court reconsider a question decided in the case in order to effect an alteration of the rights adjudicated," should be construed as a motion for reconsideration. *Greenwood*, 974 F.2d at

11

1465-66 (internal quotations and alterations omitted); *see also* ***United States v. Ibarra***, 112 S. Ct. 4, 7 (1991); ***Dieter***, 97 S. Ct. at 19-20.

## *MOYA* APPLIES ESTABLISHED PRECEDENT

I do not read ***Moya*** to hold that a motion filed under Federal Rule of Civil Procedure 35(c) suspends the appellate timetable. Instead, ***Moya*** rejects the Rule 35(c) caption employed by the defendant and construes the defendant's motion to be a common law motion for reconsideration. ***Moya*** then applies the well-established ***Healy*** doctrine to permit the defendant's motion for reconsideration to have a suspensory effect on FRAP 4(b)'s time period. As demonstrated above, ***Moya***'s rejection of the caption selected by the defendant and its liberal construction of the subject motion as a motion for reconsideration are well supported by existing precedent.

FRAP 4(b) was amended in 1993 to add a list of motions that are capable of having a suspensory effect on the ten-day time period for filing an appeal. My colleagues find significance in the fact that Carmouche's motion is not among those listed in FRAP 4(b). But our application of the ***Healy*** doctrine is not derived from or dependent upon any rule-based or statutory authority. ***Dieter***, 97 S. Ct. at 19 n.3; ***Healy***, 84 S. Ct. at 556; ***Brewer***, 60 F.3d at 1144; ***Greenwood***, 974 F.2d at 1466. We have therefore held

**12**

that the 1993 amendment to FRAP 4(b) does not prevent us from permitting a common law motion for reconsideration of a type not articulated in FRAP 4(b) to have a suspensory effect on the appellate time table. *E.g.*, *Brewer*, 60 F.3d at 1143-44.

Neither is this the first time that our Court has applied the *Healy* doctrine to a criminal defendant's request for reconsideration of a sentencing decision. *See Greenwood*, 974 F.2d at 1464-71. Even *United States v. Morillo*, 8 F.3d 864 (1st Cir. 1993), which my colleagues cite as guiding extra-circuit authority, begins its analysis with an inquiry to determine whether the defendant's motion, styled in that case as a "motion to correct sentence," is in substance a motion for reconsideration, or instead, a motion properly brought under Federal Rule of Civil Procedure 35(c). *Id*. at 867-68. Relying upon the "numerical" nature of the error alleged, the Court construed the relief requested to be within the ambit of Rule 35(c). *Id.* at 868.

I have no problem concluding in this case that Carmouche's motion is, in subject and effect, a motion for reconsideration of the district court's sentencing decisions. Rule 35(c) is intended to redress technical or obvious sentencing error that is so clear that the case would "almost certainly be remanded" for correction. FED. R. CRIM. P. 35(c) advisory committee note. Rule 35(c) is not an appropriate vehicle for requesting that the district court reconsider its application or interpretation of the sentencing

guidelines. *Id*. (Rule 35(c) "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence").

Carmouche's motion presents several arguments, most of which were argued to the district court and rejected at sentencing. Carmouche's request that the district court apply Rule 35(c) to lower his sentence based upon substantive errors argued at sentencing is inappropriate. The errors Carmouche identified are neither technical nor inadvertent, but instead reflect the considered judgment of the district court that Carmouche was not entitled to relief. Carmouche's motion is appropriately construed as a request that the district court reconsider its sentencing decisions. That being the case, there is no need in this case to decide, as the First Circuit did in *Morillo*, whether a Rule 35(c) motion can or should suspend FRAP 4(b)'s ten-day time period.

*Moya* does nothing more than construe Carmouche's sentencing motion to be a motion for reconsideration, which suspended the time for filing an appeal until the district court decided the motion. Such motions have been liberally construed to suspend the time for filing an appeal, without regard to the caption selected by the parties, and without regard to whether the relief requested falls within the scope of those motions listed in FRAP 4(b). I conclude that *Moya* is premised upon sound authority and does not by itself

**14**

create any new or objectionable rule of law.

## *GREENWOOD* CONTROLS THE REAL ISSUE

The real sticking point in this case is the possible tension between the district court's limited authority to either grant or deny a defendant's post-judgment sentencing motion and this Court's authority under the *Healy* doctrine to permit a motion requesting such relief to suspend the ten-day time period for filing an appeal.

The district court's jurisdiction to correct a sentence pursuant to Rule 35(c) ends seven days after judgment is entered. *See United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997); *United States v. Lopez*, 26 F.3d 512, 518-20 (5th Cir. 1994) (both holding that Rule 35(c)'s seven day time limit for action by the district court is jurisdictional). However, and although neither the government nor my colleagues raise this point, the district court's authority to correct an erroneous sentence is also limited by statute. *See* 18 U.S.C. § 3582. Neither Rule 35(c) nor 18 U.S.C. § 3582 authorize the district court's order denying Carmouche's post-judgment sentencing motion. Thus it is clear that the district court lacked authority, and perhaps jurisdiction, to decide Carmouche's motion when it was denied on January 22.[1]

---

[1] The Court has not clearly resolved whether the limitations specified in 18 U.S.C. § 3582 are exclusive and jurisdictional. *See Lopez*, 26 F.3d at 515 n.3.

There is a distinction, however, between the district court's authority to either grant or deny Carmouche's motion, and our authority under the *Healy* doctrine to permit that motion a suspensory effect. My colleagues would follow the First Circuit's lead in *Morillo* by holding that the district court's authority to correct an erroneous sentence is necessarily coextensive with the suspensory effect given a motion for reconsideration of sentencing issues. My response is that we considered and rejected that precise contention in *United States v. Greenwood*, 974 F.2d 1449 (5th Cir. 1992).

*Greenwood* grappled with the relationship between the district court's authority to grant the subject sentencing motion and this Court's application of the *Healy* doctrine. The Court expressly avoided deciding whether the district court had any "inherent" authority to correct a sentence, and held instead that simple application of the *Healy* doctrine rendered any inquiry into the extent of the district court's corrective powers unnecessary. *Greenwood*, 974 F.2d at 1470-72. Thus, the Court recognized that the scope of the district court's corrective powers and the suspensory effect that Supreme Court authority permitted a common law motion for reconsideration are distinct. *Id*. As a result, *Greenwood* applied the *Healy* doctrine notwithstanding an apparently valid contention that the district court lacked continuing authority to grant or deny the motion that was permitted to have

**16**

suspensory effect.  *Id*. at 1470-71; ***United States v. Carr***, 932 F.2d 67 (1st Cir. 1991) (holding that a timely motion for reconsideration suspends the time period for filing an appeal until the motion is decided, without regard to whether the district court retains authority to correct the sentence as requested).[2]

## *MORILLO* IS INCONSISTENT WITH *GREENWOOD*

*Morillo*, which my colleagues now urge upon the en banc Court, takes a contrary view.  In ***Morillo***, the First Circuit concluded that Rule 35(c) motions should be accorded a suspensory effect, but that the appellate time period would begin to run again at the expiration of seven days after entry of judgment, rather than when the district court decided the motion.  *See* ***Morillo***, 8 F.3d at 869. That holding in ***Morillo*** equates the district court's jurisdiction to grant or deny a particular motion with the effect that motion will have on FRAP 4(b)'s appellate timetable.  *Id*.  Thus, ***Morillo***'s holding is in direct conflict with this Circuit's authority in

---

[2]    ***Ibarra*** is consistent with this approach.  In that case, the government appealed the district court's adverse ruling on a motion to suppress drugs.  ***Ibarra***, 112 S. Ct. at 4-5.  The government originally sought to justify the objectionable search on a theory of continuing consent, but abandoned that theory in subsequent pleadings.  *Id*.  The government attempted to revive the continuing consent theory in a timely filed motion for reconsideration.  *Id*. The Tenth Circuit held that a motion for reconsideration premised upon a disavowed theory is ineffective to suspend the time period for filing an appeal.  *Id*. at 6.  The Supreme Court rejected that analysis, holding that the likelihood of success on the merits is immaterial to the ***Healy*** doctrine's "bright-line" approach.  *Id*. at 6-7.

*Greenwood*.  I conclude that *Greenwood*, and its holding that our authority under *Healy* can be distinguished from the district court's authority to grant the relief requested, presents the principal source of disagreement in this case.  For the sake of clarity, any reconsideration of the issues raised by this case should focus upon *Greenwood*, which articulates at length the basis of its holding, rather than *Moya*, which merely applies the rule.

Neither am I persuaded that *Greenwood* is wrongly decided.  My colleagues cite *Ibarra* for the proposition that the Court should adopt a "bright-line rule" that any motion filed under a Rule 35(c) caption is ineffective to suspend the time period for filing an appeal more than seven days past judgment.  But the "bright-line" rule announced in *Ibarra*, and invoked in *Greenwood*, requires liberal construction of any post-judgment pleading that comes close to requesting reconsideration of a question decided in the case as a common law motion for reconsideration that is effective to suspend FRAP 4(b)'s time period.  *Ibarra*, 112 S. Ct. at 6-7; *Greenwood*, 974 F.2d 1466-67.

The Supreme Court has emphasized that when making that liberal construction, we are not bound by the caption selected by the parties, and should examine the substance of the motion filed to determine whether the relief requested fits within the framework of a common law motion for reconsideration.  *E.g.*, *Dieter*, 97 S. Ct. at 19-20.  Clearly, the Court is not free to condone an approach

that would effectively circumvent Rule 35(c) by construing every Rule 35(c) motion to be a common law motion for reconsideration. But I fail to see how the language cited by my colleagues, which reads as a command to liberally construe post-judgment pleadings to achieve the judicial efficiency justifying the *Healy* doctrine, can be used as a sword to deny appellate review because counsel has selected the wrong caption for the motion.

Litigants have no control over when or if the district court will decide a pending post-judgment motion. The "bright-line" rule established by the Supreme Court accords a post-judgment motion suspensory effect whenever it requests reconsideration of a question decided at trial that will effect an alteration of the rights adjudicated. *Ibarra*, 112 S. Ct at 7; *Dieter*, 97 S. Ct. at 19-20; *Greenwood*, 974 F.2d at 1466-67. I do not agree that denying review in a criminal case because there is a debatable issue about whether the district court's jurisdiction may have expired before it decided a pending motion that would otherwise suspend the time for filing an appeal will serve to "protect" the interests of the parties. I would therefore adhere to the Court's holding in *Greenwood*.

DUHÉ, Circuit Judge, with whom GARWOOD, Circuit Judge, joins specially concurring:

While recognizing that we are bound by our unpublished decision in Moya, supra, we write separately to urge this Court to reconsider *en banc* Moya's holding that a pending Fed. R. Crim. P. 35(c) motion will postpone running of the Fed. R. App. P. 4(b) time period for filing a notice of appeal until the judge disposes of the motion. We believe Moya was incorrectly decided for the following reasons.

Moya held that a defendant's motion to correct his sentence under Fed. R. Crim. P. 35(c) was "one of the species of motions for reconsideration" that prevent running of the ten-day 4(b) time period until disposition of the motion. Moya, No. 94-10907, at 4. The Moya panel recognized that a Rule 35(c) motion was not one of those listed in Fed. R. App. P. 4(b) as postponing commencement of the ten-day period. Id. at 3. Nevertheless, the panel included Moya's 35(c) motion within the class of "motions for reconsideration" which the jurisprudence has traditionally given suspensory effect. Id., citing United States v. Greenwood, 974 F.2d 1449, 1466 (5th Cir. 1992). Finally, the panel found that the rule in Greenwood had survived the 1993 amendment to Rule 4(b). Moya, No. 94-10907, at 4, citing United States v. Brewer, 60 F.3d 1142, 1144 (5th Cir. 1995).

We believe the *en banc* Court should overrule Moya because it

disregarded the language and implications of Rule 4(b), and because it overlooked the effect of the 1991 amendment to Fed. R. Crim. P. 35 and Rule 35's accompanying Advisory Committee Notes. We also urge the *en banc* Court to clarify the effect of a timely-filed Rule 35(c) motion on the running of the 4(b) period, in order to give appellants a "bright-line" standard for determining when the ten-day limitation on filing a notice of appeal begins to run. <u>See, e.g.</u>, <u>United States v. Morillo</u>, 8 F.3d 864, 869 (1st Cir. 1993).

Fed. R. Crim. P. 35 was amended in 1991[3] to codify a district court's "inherent authority" to correct an erroneous sentence. <u>See</u> Fed. R. Crim. P. 35(c), advisory committee notes (1991 amendment). The Advisory Committee Notes indicate that, while the Committee wanted to explicitly recognize such authority, it also "believed that the time for correcting such errors should be narrowed within the time for appealing the sentence to reduce the likelihood of jurisdictional questions in the event of an appeal...." <u>Id</u>. To that end, the Committee

> contemplat[ed] that the [district] court would enter an order correcting the sentence and that such order must be entered within the seven (7) day period so that the appellate process (if a timely appeal is taken) may proceed without delay and without jurisdictional confusion.

---

[3]Rule 35(c), eff. December 1, 1991, reads: "The Court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical or other clear error."

<u>Id</u>.[4]

In light of new Rule 35(c), Fed. R. App. P. 4(b) was amended to read, in pertinent part:

> The filing of a notice of appeal under this Rule 4(b) does not divest a district court of jurisdiction to correct a sentence under Fed.R.Crim.P. 35(c), nor does the filing of a motion under Fed.R.Crim.P. 35(c) affect the validity of a notice of appeal filed before entry of the order disposing of the motion.

<u>See</u> Fed. R. App. P. 4(b)(amendment eff. Dec. 1, 1993) <u>and</u> advisory committee notes (1993 amendment). Rule 4(b), as discussed above, does not list a Rule 35(c) motion as one that postpones running of the ten-day period for filing a notice of appeal.

Both of these statutory changes were in effect when <u>Moya</u> was decided in 1995. Nonetheless, <u>Moya</u> summarily decided that a defendant's Rule 35(c) motion to correct his sentence, based on an asserted error in imposing supervised release under 18 U.S.C. § 3565(a)(2), was a "motion for reconsideration" that effectively postponed running of the 4(b) period until disposition of the motion. <u>Moya</u>, No. 94-10907, at 3-4. The <u>Moya</u> panel did not mention the Advisory Committee Notes to amended Rule 35(c), nor did it consider the combined effect of amended Rule 35(c) and amended Rule 4(b), except to observe that the <u>Greenwood</u> rule survived the

---

[4]We so recognized in <u>United States v. Lopez</u>, 26 F.3d 512, 518-19 (5th Cir. 1994), where we also cited <u>Morillo</u> with approval. <u>See also</u> <u>United States v. Early</u>, 27 F.3d 140, 141-42 (5th Cir. 1994).

22

1993 amendments to Rule 4(b).[5]  Id., at 4.

Although we recognize that amended Rules 4(b), 35(c) and their accompanying notes are subject to more than one interpretation, we believe that the most reasonable construction is the one given by the First Circuit in United States v. Morillo, 8 F.3d 864, 867-70 (1st Cir. 1993).  There the First Circuit, guided by the erudite pen of Judge Selya, held that:

> (1) a motion under Rule 35(c) interrupts the [4(b)] appeal period and renders a judgment nonfinal only if it is brought within seven days following the imposition of sentence; and (2) the appeal period is restarted when the district court decides a timeous[6] Rule 35(c) motion or at the expiration of seven days next following imposition of sentence, whichever first occurs.

Id. at 869.  Morillo thus recognized two different aspects of the issue:  first, that the Healy doctrine continued to apply to a Rule 35(c) motion, notwithstanding the absence of a 35(c) motion from the list of motions in Rule 4(b) that interrupt the ten-day appeal period;[7]  and second, that application of the Healy doctrine is,

---

[5]Moya cited Brewer, supra, for the proposition that Greenwood was unaffected by the 1993 amendments to Rule 4(b).  See Brewer, 60 F.3d at 1144.  We merely observe here that Brewer did not deal with a Rule 35(c) motion at all -- instead, Brewer addressed the effects on the 4(b) period of a motion to set aside a *conviction* rather than a sentence.  See id. at 1144-46.

[6]"timely" -- Webster's Third New World Dictionary 2395 (3d ed. 1981).

[7]See United States v. Healy, 376 U.S. 75, 78-80 (1964).  See also United States v. Ibarra, 502 U.S. 1, 6-7 (1991); United States v.

23

however, limited to the seven-day period imposed by amended Rule 35(c). After seven days, the 35(c) motion is deemed denied, even if still pending. Id.; see also United States v. Turner, 998 F.2d 534, 536 (7th Cir. 1993). In our view, the First Circuit's approach rationally effects the Advisory Committee's desire to balance judicial efficiency with a concern that "the appellate process ... proceed without delay and without jurisdictional confusion." Fed. R. Crim. P. 35, advisory committee notes (1991 amendment).

To the extent that Moya can be interpreted as holding that *all* Rule 35(c) motions indefinitely postpone running of the 4(b) period (that is, until the court disposes of the motion), we would urge the *en banc* Court either to overrule the decision, or at least to clarify its holding. The Supreme Court itself has observed, in refusing to accord suspensory effect only to meritorious motions for reconsideration, that "[w]ithout a clear general rule litigants would be required to guess at their peril the date on which the time to appeal commences to run." United States v. Ibarra, 502 U.S. 1, 7 (1991). For the same reason, we would decline to adopt Judge DeMoss's approach (see supra at ____) that a court accord suspensory effect only to those 35(c) motions that are more appropriately styled common-law "motions for reconsideration."

_____

Dieter, 429 U.S. 6, 8 (1976)(per curiam); Greenwood, 974 F.2d at 1470-71.

Such an approach, while it may find some support in case law antedating the amendments to Rules 4(b) and 35,[8] would fail to accord to potential *appellants* (whom, after all, the "bright line" rule is here intended to protect) a sufficient yardstick by which to measure the time within which to file a notice of appeal.

For the moment, however, we bow our heads to <u>Moya</u>'s precedential force and find that Carmouche's appeal was timely.

---

[8]<u>See, e.g.</u>, <u>Greenwood</u>, 974 F.2d at 1464-1471.

25