[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 541 
William E. King was indicted on 22 counts of first-degree kidnapping, in violation of § 13A-6-43, Code of Alabama 1975. These charges arose out of the prison riot that occurred at the St. Clair Correctional Facility on April 15, 1985. Following two mistrials and the State's dismissal of counts 13 and 22 of the indictment, the jury found King guilty of 20 counts of the lesser included offense of kidnapping in the second degree. King was sentenced as a habitual offender to life imprisonment on each charge, with each sentence to run concurrently. Four issues are raised on appeal.
 I
King contends that the trial court erroneously allowed into evidence testimony concerning various assaults committed by King and other inmates during the prison riot and testimony of coconspirators.
Generally, prior crimes or prior bad acts of an accused not charged in the indictment are not admissible if the only probative function of such evidence is to show the accused's bad character. Ex parte Cofer, 440 So.2d 1121, 1123 (Ala. 1983) (quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977)). However, crimes or bad acts of the accused are admissible when such crimes are "inseparably connected with" or are part of the res gestae of the now charged crime. Smoot v.State, 381 So.2d 668, 671 (Ala.Cr.App. 1980), C. Gamble,McElroy's Alabama Evidence § 69.01(3) (4th ed. 1991).
In the case sub judice, King's use of force, threats, and assaults on the hostages occurred contemporaneously with the charged crime of kidnapping and was therefore part of the resgestae of the offense of kidnapping and was admissible as evidence against him.
The assaults committed by the other inmates during the riot were also properly admitted against King because acts or statements of coconspirators during the commission of the crime are admissible against the accused. Moore v. State,539 So.2d 416, 420 (Ala.Cr.App. 1988) (acts and statements of coconspirators also admissible when viewed as part of resgestae); Lundy v. State, 539 So.2d 324, 330 (Ala.Cr.App. 1988). C. Gamble, McElroy's Alabama Evidence § 195.01(3), (10) (4th ed. 1991).
The evidence submitted during King's trial tended to prove the existence of a conspiracy and his participation in that conspiracy. The evidence revealed that King was among the inmates who began the riot. King was also closely associated with the leaders of the rioting inmates and participated in every stage of the riot, including negotiations. This evidence, although circumstantial in nature, established that King was involved in the conspiracy to commit kidnapping, in furtherance of the inmates' plan to riot and take control of the prison. Hence, the statements and acts of King's coconspirators were admissible against him in his kidnapping trial.
 II
King contends that his trial on 20 counts of first-degree kidnapping was barred by *Page 542 
double jeopardy considerations. We disagree.
King failed to receive a ruling on his motion to dismiss and plea of former jeopardy, which was filed on December 8, 1988, prior to this trial. Where there is no ruling adverse to the defendant and no objection to the court's failure to rule, the issue is procedurally barred from appellate review. Trawick v.State, 431 So.2d 574 (Ala.Cr.App. 1983); Gibbs v. State,342 So.2d 448 (Ala.Cr.App. 1977).
We note, moreover, that because King failed to object to the first mistrial, moved for the second mistrial, and offered no evidence of bad faith or prejudice, as a result of the mistrials, this third trial was not barred by double jeopardy.Lee v. United States, 432 U.S. 23, 33-34, 97 S.Ct. 2141,2147-48, 53 L.Ed.2d 80 (1977); Oliver v. State, 479 So.2d 1385,1390 (Ala.Cr.App. 1985).
Furthermore, the State's dismissal prior to trial of count 22 of the indictment charging King with the first-degree kidnapping of Warden Larry Spears vitiated King's plea of former jeopardy based upon King's previous conviction for third-degree assault on Warden Spears.
 III
King contends that the trial court erroneously denied his discovery request, in violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The record reveals that King's first discovery request was filed on August 8, 1986. This request, which was ageneral request for discovery, was granted by the trial court's general discovery order entered September 5, 1986. King's second motion for discovery was identical to his first and was filed on February 18, 1987. This request was also granted by the trial court's general discovery order entered February 23, 1987. On March 6, 1987, the State made known to the defense that the materials requested were available for inspection, copying, or other reproduction at the office of the district attorney.
During the first trial, on December 7, 1987, defense counsel for the first time brought his discovery requests to the attention of the court. At that time, defense counsel stated that he had been provided with the statement of one of the State's witnesses, which contained exculpatory information, and that there might be 21 other statements that could contain exculpatory information. After some discussion, the trial judge refused to order the State to produce all of its witnesses' statements prior to trial. This trial ended in a mistrial on grounds unrelated to the discovery issue.
On March 23, 1988, during King's second trial, the discovery issue was raised again. King attempted to compel disclosure of all statements of the State's witnesses prior to trial. No ruling on this motion is apparent from the record. On King's motion, a mistrial was declared. Because the record of this trial is unavailable, the grounds for the second mistrial are unknown.
On August 15, 1988, King's case was set for trial on December 12, 1988. In a hearing before the trial judge on December 12, 1988, defense counsel claimed that there were hundreds of witnesses' statements which might contain exculpatory material. The assistant district attorney advised that all information that he was aware of concerning King had been made available to the defense, except for a report compiled by a team from the Alabama Bureau of Investigation and the inspector and the investigation division of the Department of Corrections. The assistant district attorney further stated that the report did not have anything to do with the crimes committed at St. Clair Correctional Facility, and that it was a confidential report that contained recommendations for improvement of security at St. Clair. He further explained that the confidentiality was to prevent the report and its recommendations from falling into the hands of inmates so that they would not be able to circumvent new security measures and riot again. The court did not rule on this specific request. *Page 543 
The discovery issue was next raised later that day during the trial when the court stated:
 "THE COURT: Let the record show that this morning before this trial was commenced, the question was brought up before the Court, and I offered to recess this case until tomorrow to give him an opportunity to examine any and all reports, or what other records the D.A. has. And at that time, if it was necessary for witnesses to be subpoenaed as a result of the findings, that I would consider continuing the case for the term if such was justified based on any of the records in the D.A.'s office. And the attorney for the defendant at that time stated to the court that he wished to proceed with the trial rather than take a recess."
Defense counsel then requested that the court recess to view the other 8 or 10 reports to see if they contained anyBrady material. Because the trial had already begun, the court refused to interrupt the trial, but allowed defense counsel the opportunity to examine the reports after adjournment that afternoon and the following morning before trial resumed. The court also gave defense counsel the opportunity to call the witness back after reviewing the materials. The prosecutor stated that only 2 of the 8 or 10 reports were written, and that defense counsel had access to all written reports before trial commenced.
The trial court then concluded this discovery matter as follows:
 "THE COURT: I don't want to get in the position, now, I want this record correct, Mr. Brown. [defense counsel] You know in chambers this morning, I offered to take a recess in this case for this date, and then if there was anything developed as a result of your research today, if justified, I would continue the case for the term. And, you told me you did not want to take a recess. You did not want it continued. You wanted to proceed with the trial. Now, the only thing I am interested in doing is having the record correct. I don't want the record to be in error on a false premise of any kind. Call the jury back in. I will give you an opportunity to check it when we adjourn this afternoon, and make it available to you, if you want to be here early in the morning, make it available to you then before trial."
In this case, the record reflects that there was no suppression of exculpatory evidence as was condemned inBrady. First, King has not specifically identified any evidence that was exculpatory that was suppressed by the State. Second, prior to trial, the court effectively ordered "open file" discovery and advised defense counsel that it would grant a continuance to allow defense counsel the opportunity to review the State's files. Defense counsel declined the offer and proceeded to trial. Error cannot be predicated on the nondisclosure of information where defense counsel declined the opportunity to review the information. Clemons v. State,491 So.2d 1060, 1061 (Ala.Cr.App. 1986). Kennedy v. State,472 So.2d 1092, 1096 (Ala.Cr.App. 1984), aff'd, 472 So.2d 1106 (Ala.),cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325
(1985).
Additionally, there is no evidence that the sought information was material or that it would have had any effect on the outcome of the trial, especially in light of the overwhelming evidence of King's guilt. Ex parte Raines,429 So.2d 1111, 1113-14 (Ala. 1982); Moncrief v. State,551 So.2d 1175 (Ala.Cr.App. 1989).
 IV
King contends that during the trial court's oral charge to the jury, the court erroneously instructed the jury that King was presumed guilty and used the words "victims" and "hostages."
When a trial court's oral charge is reviewed, the entire charge must be construed as a whole. Harris v. State,412 So.2d 1278, 1281 (Ala.Cr.App. 1982). Statements made by the trial judge during his oral charge should be examined in light of the entire charge. This court should not review isolated statements taken out of context and make them grounds for reversal because "isolated statements which appear *Page 544 
prejudicial when taken out of context may be innocuous when reviewed in light of the entire trial." Kennedy v. State,supra, 472 So.2d at 1103 (quoting United States v. McCoy,539 F.2d 1050, 1063 (5th Cir. 1976), cert. denied, 431 U.S. 919,97 S.Ct. 2185, 53 L.Ed.2d 230 (1977)).
Although the trial court erroneously stated that "the defendant was presumed to be guilty . . .," the court immediately corrected the misstatement and made it abundantly clear that King was presumed innocent and re-emphasized its previous thorough instruction concerning the State's burden of proof. Hence, the trial court's misstatement was not reversible error when considered in light of the entire charge.
The trial court's use of the words "victim" and "hostage" was not error because these words are contained in § 13A-6-43, Codeof Alabama 1975, which was properly referred to by the trial judge when instructing on the elements of the charged crimes. A charge which tracks the identical language of the statute is proper. Jordan v. State, 17 Ala. App. 575, 87 So. 433, cert.denied, 205 Ala. 114, 87 So. 434 (1920).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.