935 So.2d 421 (2006)
Ex parte Darius M. BENFORD and Jarvis Sales.
(In re Darius M. Benford and Jarvis Sales
v.
State of Alabama).
1040790.
Supreme Court of Alabama.
January 27, 2006.
*423 Robert B. Tuten, Huntsville, for petitioner Darius Benford.
John Langland, Huntsville, for petitioner Jarvis Sales.
Troy King, atty. gen., and Elizabeth Ray Butler, asst. atty. gen., for respondent.
PER CURIAM.
Darius M. Benford and Jarvis Sales petition this Court for a writ of mandamus directing Judge Laura W. Hamilton of the Madison Circuit Court to grant their motions to dismiss the charges against them. We grant the petition and issue the writ.
Benford and Sales ("the defendants") were indicted for attempted murder; their cases were consolidated for trial. Before jury selection began, the trial court arraigned the defendants, read the indictments to them, and accepted "not guilty" pleas from them. The panel of prospective jurors was then brought into the courtroom. The trial court introduced the parties and counsel, notified the prospective jurors of the charges against the defendants, informed the prospective jurors of the time and location of the offenses charged, and asked the prospective jurors if they had served on the grand jury that had indicted the defendants or if they otherwise had any knowledge of the case. The trial court also asked the prospective jurors other questions concerning their ability to serve on the jury. The trial court then conducted a voir dire examination of the prospective jurors.
During voir dire, after prospective jurors were dismissed for cause, the jury panel was left with one person fewer than the required 36 members. Rule 18.4(f)(1), Ala. R.Crim. P., requires 24 prospective jurors if the offense charged is a felony not punishable by death. Rule 18.4(f)(2), Ala. R.Crim. P., provides that "[i]f two (2) or more persons are being tried jointly, to the minimum number of names otherwise required for striking there shall be added twelve (12) additional names for each additional defendant." Therefore, because Benford and Sales were being tried together, 36 prospective jurors were required for the panel. However, Rule 18.4(h)(2), Ala. R.Crim. P., allows the parties to consent to the use of a lesser number of prospective jurors than the number required by subsection (f). Both Benford and Sales consented on the record to proceed with striking the jury even though the panel contained only 35 prospective jurors. Jury selection continued, and a jury was chosen. The jury was seated and sworn by the trial court. The trial court then gave the jury some preliminary instructions and dismissed the jury for the day.
The following day the trial court called the parties into chambers and sua sponte declared a mistrial. The conference in chambers was not recorded. Benford and Sales allege in their mandamus petition that the trial court "announced that a mistrial was declared, sua sponte, due to insufficient members on the jury venire from which to strike a jury." They further allege in their petition that "[b]oth defendant's [sic] objected to a mistrial" and that the trial court "declared a mistrial over the defendants' objections."
In an affidavit submitted in response to the petition for a writ of mandamus, the trial judge stated:
"My name is Laura Hamilton. I am over the age of nineteen years. I am currently a circuit judge for Madison County. Cases numbered CC-02-3275 *424 and CC-03-195, State v. Darius Marques Benford and Jarvis Sales[,] are currently pending in my court.
"On March 1, 2004, I utilized the `on-call' jury system developed by the Madison County Court Administrator. I understood that the jury pool had been qualified before entering my courtroom and, therefore, I did not qualify the potential jurors. Jury selection began. One of the thirty-six members of the venire was struck for cause, leaving thirty-five remaining in the jury pool. Both parties agreed to continue with voir dire although there were fewer jurors in the pool than required.
"Following voir dire, twelve jurors were chosen. Just before I swore in the jurors, I mentioned that I was going to issue another oath to them like they had taken before  and the jury looked puzzled, as if they did not know what I was talking about. This did raise a `red flag' for me, but I swore in the jury anyway. After this, I gave them some preliminary instructions and called a recess.
"After dismissing the jurors, I learned from the Madison County Court Administrator's Office that they had changed their policy regarding `on-call jurors.' Originally, the `on-call jurors' were to come from a jury pool after it was qualified. Then jurors would be asked to come back for `on-call' jury service at a later date. I was informed that this procedure was changed from drawing from a qualified pool to a pool of jurors who were originally dismissed and requested to return at a later date. They were dismissed before any of the jurors were qualified or sworn and were not qualified when they returned at the later date for jury duty.

"Very concerned that the jurors had never been qualified, I immediately contacted Lynn Thrower at the Administrative Office of Courts for advice. Pursuant to my conversation with Ms. Thrower, I decided that, in order to protect the defendants' right to a fair trial, it was necessary to declare a mistrial so that a new jury pool could be properly qualified before jury selection.
"On the following morning, I called counsel for both sides into my chambers to explain that I, along with the Administrative Office of Courts, determined that a manifest necessity for a mistrial existed. As I did not perceive any undue prejudice to either side, I declared a mistrial and set the case for a new trial."
(Emphasis added.) The trial court discharged the jury and rescheduled the case for trial.
The record is unclear as to whether Benford and Sales were aware of the failure to qualify the jury generally or to give the initial oath, although the affidavit of the trial judge states that the jurors "looked puzzled" when told that another oath was about to be administered. Presumably, this reaction was in open court and was also observed by Benford and Sales. In all events, there is no allegation in the petition or mention in the materials submitted with the petition of an objection by them to the failure to qualify the jury generally or to the failure to administer the first oath before the mistrial was declared. Assuming that Benford and Sales were unaware of the omission, there is nothing in the materials before this Court to indicate that the trial court informed them of it and asked them if they would waive any objection before the Court declared a mistrial.
Benford and Sales filed motions to dismiss the charges against them, arguing that because a jury had been empaneled and sworn, jeopardy had attached as to the charges against them and any subsequent trial, therefore, on those same charges *425 would violate their Fifth Amendment rights to protection from double jeopardy. See Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) ("[T]he double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and... it should apply to the States through the Fourteenth Amendment."). See also Art. I, § 9, Constitution of Alabama of 1901 ("[N]o person shall, for the same offense, be twice put in jeopardy of life or limb; but courts may, for reasons fixed by law, discharge juries from the consideration of any case, and no person shall gain an advantage by reason of such discharge of the jury."). The trial court denied the motions to dismiss. Benford and Sales petitioned the Court of Criminal Appeals for a writ of mandamus directing the trial court to grant their motions; that court denied their petition by an order. Ex parte Benford (No. CR-04-0952, March 3, 2005), 925 So.2d 1026 (Ala.Crim.App.2005) (table). They then petitioned this Court pursuant to Rule 21(e)(1), Ala. R.App. P., for a writ of mandamus directing the trial court to grant their motions.
A defendant's double-jeopardy claim is properly reviewed by a petition for a writ of mandamus. Ex parte Ziglar, 669 So.2d 133 (Ala.1995). In order for this Court to issue a writ of mandamus, Benford and Sales must establish: "`(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'" Ex parte Bloodsaw, 648 So.2d 553, 554 (Ala. 1994) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991)).
Benford and Sales argue that because jeopardy had attached before the trial court declared the mistrial, they cannot be retried for the same offense unless the trial court declared the mistrial because of a manifest necessity. They recognize that they did not object to the apparent failure to qualify the jury generally and to swear in the jury venire before voir dire, and, they argue, no manifest necessity therefore existed that required the trial court to declare a mistrial. The State argues that the trial court's declaration of a mistrial was based on a manifest necessity caused by, as stated in the trial judge's affidavit, the dismissal of the jury pool "before any of the jurors were qualified or sworn" and the fact that the jurors "were not qualified when they returned at the later date for jury service."
In Ex parte Tribble, 783 So.2d 69 (Ala.2000), this Court stated:
"The Fifth Amendment protects a defendant against a second prosecution for the same offense after an acquittal. Jeopardy attaches in a jury trial when the jury is empaneled and sworn. Once jeopardy attaches, retrial of a defendant after a mistrial is barred unless the trial court declared the mistrial because of `manifest necessity.' Further, for the trial court to declare a mistrial, a `high degree of manifest necessity' must be demonstrated .... However, a mistrial should be granted only as a last resort `where it is apparent that justice cannot be afforded' otherwise."
783 So.2d at 72 (citations omitted). Clearly, jeopardy had attached in this case; therefore, any retrial of the defendants is barred unless a "high degree of manifest necessity" was demonstrated justifying the trial court's declaration of a mistrial.
Before we determine whether a manifest necessity existed so as to justify the mistrial declared in this case, however, we must, as a threshold concern, determine whether there is sufficient basis on which to conclude that the defendants objected to *426 the trial court's declaration of a mistrial. If the defendants did not object, then whether a manifest necessity existed for the declaration of a mistrial would be irrelevant. See King v. State, 595 So.2d 539, 542 (Ala.Crim.App.1991) ("We note, moreover, that because King failed to object to the first mistrial [and] moved for the second mistrial, ... this third mistrial was not barred by double jeopardy."); Riggins v. State, 429 So.2d 683, 685 (Ala.Crim.App. 1983) (trial court properly denied defendant's motion to quash indictment alleging that retrial after mistrial in prior court proceeding constituted double jeopardy where it was reasonably clear that mistrial was declared "without any objection whatsoever on the part of the defendant"); Pope v. State, 228 Ala. 609, 155 So. 79 (1934) (trial court properly overruled plea of former jeopardy based on mistrial declared in previous trial where defendant did not object when State moved for a mistrial). See also United States v. Nichols, 977 F.2d 972, 974 (5th Cir.1992) (when a defendant "`does not object timely to the declaration of a mistrial, his double jeopardy claim may be vitiated by his consent'" (quoting United States v. Gordy, 526 F.2d 631, 635 n. 1 (5th Cir.1976)) ).
As previously noted, the defendants aver in their petition for a writ of mandamus that they objected to the trial court's declaration of a mistrial. In the absence of an objection of record, we would as a general rule conclude that the defendants consented to the mistrial.[1] However, this case comes to us by way of a petition for a writ of mandamus, and the only matters of record before us are those submitted by the parties. The defendants have submitted their petition, a reply, and a copy of the transcript of the jury voir dire proceedings. The State has submitted only its response and the above-quoted affidavit of the trial judge, both of which are silent as to whether the defendants objected to the declaration of a mistrial. In Ex parte Turner, 840 So.2d 132, 134-35 (Ala.2002), we stated that the respondent's "failure to respond to the allegations in [the] petition for a writ of mandamus compels this Court to consider the averments of fact in [the] petition as true." See also Guaranty Funding Corp. v. Bolling, 288 Ala. 319, 327, 260 So.2d 589, 596 (1972), quoted in Turner, stating: "[T]he answer does not contain a denial of any of the facts stated in the petition for mandamus, nor does it contain averments of other facts sufficient in law to defeat the petitioner's application. It follows that the averments of facts in the petition for mandamus... will be taken as true." Because neither the State's response nor the trial judge's affidavit, obviously drawn with knowledge of the allegations made by the defendants in their petition for the writ of mandamus, contains a denial that the defendants objected, averments of other facts sufficient to defeat the averments of fact in the defendants' petition, or a challenge to the sufficiency of the objection, we are compelled to take as true the defendants' claim that they adequately objected to the declaration of a mistrial. We must therefore examine whether a manifest necessity existed that would justify the trial court's *427 declaration of the mistrial. Under the facts presented by this case, we must conclude that a mistrial cannot be considered a manifest necessity in face of a defect that is subject to waiver.
We first examine whether the defendants could have waived the failure to swear the jury venire initially. As a general rule, two separate oaths are administered to persons who report for jury duty in Alabama. Initially, the entire venire is sworn before the members of the venire are examined as to their qualifications to serve. Rule 12.1(c), Ala. R.Crim. P., states:
"(c) Qualifying the Venire. On the opening day of the term, or on such other day as the venire shall have been summoned to appear, the judge presiding shall proceed to organize the court, by:
"(1) Determining which jurors are present;
"(2) Administering or causing to be administered to the jurors the following oath as required by law:
"`Do you and each of you solemnly swear or affirm that you will well and truly answer all questions propounded to you touching your general qualifications as a juror, or qualifications as a grand juror or petit juror, and that you will well and truly try all issues and execute all writs of inquiry submitted to you and true verdicts render according to the law and evidence, so help you God?' "and,
"(3) Inquiring of the jurors as to their qualifications in general, considering any excuse or postponement from service for the term, and excusing from service those jurors who are disqualified or who are entitled to be excused."
After members of the venire are qualified generally, they may then be selected to serve on a grand jury or a petit jury. Grand jurors are sworn pursuant to § 12-16-172, Ala.Code 1975. Section 12-16-170, Ala.Code 1975, prescribes an oath for petit jurors and, because the statute refers to the jurors' trying "issues which may be submitted to you during the present session (or week, as the case may be)," it contemplates administration of this oath before a juror is selected to serve on a specific case. Once a jury has been selected for service on a case, the trial court, pursuant to Rule 18.5, Ala. R.Crim. P., has the option of reminding the jurors that they are still under oath, or the trial court may give an additional oath, as follows:
"You do solemnly swear, or affirm, that you will well and truly try all issues joined between the defendant(s) and the State of Alabama and render a true verdict thereon according to the law and evidence, so help you God."
Until comparatively recently, whether the failure to swear members of the venire before examining them on their qualifications was a waivable error had been a source of confusion in this State for many years. In one line of cases (see, e.g., Washington v. State, 81 Ala. 35, 1 So. 18 (1887)), the Court held that it would presume that members of the venire were sworn where the record was silent, but in another line of cases (see, e.g., Harrington v. State, 83 Ala. 9, 3 So. 425 (1888)), the Court held that the record must show that such oath was administered. The conflict between the two lines of cases was not expressly resolved until the Court adopted the rule stated in the Harrington line of cases in Hines v. State, 238 Ala. 575, 576, 192 So. 423, 424 (1939) ("The minutes must show that defendant was present on his trial on an issue of not guilty by a jury duly impaneled and sworn, who returned the verdict on that issue.").
*428 In Holland v. State, 668 So.2d 107 (Ala. Crim.App.1995), the Court of Criminal Appeals, relying upon Tarver v. State, 500 So.2d 1232, 1241-42 (Ala.Crim.App.1986), stated that while there is no statutory requirement that veniremembers be sworn, there was no reason the principles governing the administration of an oath to the petit jurors[2] should not also govern the administration of an oath to the venire. Five years later, in Ex parte Hamlett, 815 So.2d 499 (Ala.2000), this Court granted certiorari review in a case in which the defendant argued that even though his petit jury had been sworn, he was entitled to have his conviction overturned because the venire had not been properly sworn before the voir dire examination began. After quoting from Holland, the Court concluded that it could not tell whether the jury venire had been sworn and remanded the case to allow the trial court to make the factual findings necessary for a determination as to whether the venire had been properly sworn.
The following year, relying on Hamlett, the Court of Criminal Appeals held that a claim that the jury venire was not sworn before voir dire was jurisdictional and could not be waived or precluded. See Nix v. State, 819 So.2d 84 (Ala.Crim. App.2001). Shortly thereafter, however, the Court of Criminal Appeals overruled its opinion in Nix, stating that upon reconsideration, it concluded that "Hamlett does not indicate that we are to treat jury-swearing issues as jurisdictional and therefore nonwaivable." Fortner v. State, 825 So.2d 876, 879 (Ala.Crim.App.2001). The Court of Criminal Appeals stated:
"Our rereading of Hamlett teaches us, first, that Hamlett's claim was within the two-year limitations period in Rule 32.2(c). Thus, the simple fact that the Court was willing to reach the claim does not indicate that the claim was jurisdictional because the claim was raised in a petition that had been filed within the two-year limitations period.[[3]] Second, the Court remanded the cause to the circuit court both because it would not assume from a silent record that the venire had been sworn and because it could not reach Hamlett's ineffective-assistance-of-counsel claim without knowing whether Hamlett's counsel had in fact rendered ineffective assistance by failing to object to the trial court's alleged failure to administer the oath to the venire. Thus, because of Hamlett's ineffective-assistance-of-counsel claim, the Court could not simply find that Hamlett had waived his claim that the venire had not been sworn because that claim had a direct bearing on the result of Hamlett's claim alleging ineffective assistance of counsel. If the Court allowed the waiver of the jury-swearing claim, it effectively allowed the waiver of Hamlett's ineffective-assistance-of-trial-counsel claim, which would have been contrary to the law in Alabama concerning the waivability of ineffective-assistance-of-counsel claims. Ex parte Ingram, *429 675 So.2d 863, 866 (Ala.1996) (`When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala. R.Crim. P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala. R.Crim. P., petition for post-conviction relief.') Thus it was the ineffective-assistance-of-counsel claim that concerned the Court in Hamlett.

"Nothing in Hamlett indicates that the Alabama Supreme Court set out to overrule precedent of this Court and thereby render jury-swearing claims jurisdictional and nonwaivable. A trial court's failure to administer the oath to a jury venire, while reversible error, does not rob the trial court of its jurisdiction to render judgment and to impose sentence against a defendant. We therefore narrow our reading of Hamlett, overrule our decision in Nix, and find that a petitioner's claim that the jury venire, or the petit jury, was not properly sworn is not jurisdictional and is waivable."
825 So.2d at 879-80. We conclude that the Fortner court correctly interpreted our opinion in Hamlett.
Finally, in Brooks v. State, 845 So.2d 849 (Ala.Crim.App.2002), released on March 1, 2002, exactly two years before the proceedings in this case, the Court of Criminal Appeals accurately summarized the law as to whether administering only one of the two oaths constitutes a jurisdictional error. Of course, a conclusion that the error was jurisdictional would support a determination that a high degree of manifest necessity justified a mistrial in this proceeding. In Brooks, the Court of Criminal Appeals stated:
"It is well settled that `[t]he failure to administer the oath to the jury renders the jury's verdict a nullity,' Dyson v. State, 722 So.2d 782, 785 (Ala.Crim.App. 1997), and that `if the jury or any member thereof was not sworn, it was not the verdict of a jury.' Fowler v. State, 261 Ala. 262, 263, 74 So.2d 512, 513 (1954). See also Hines v. State, 238 Ala. 575, 192 So. 423 (1939); Melton v. State, 45 Ala. 56 (1871); and Hill v. State, 582 So.2d 1165 (Ala.Crim.App.1991). However, in Ex parte Deramus, 721 So.2d 242 (Ala.1998), the Alabama Supreme Court recognized that there is a difference in a situation in which no oath is given to jurors at all and a situation in which there is merely a defect in the oath. In Deramus, the jury venire was administered an oath before voir dire examination, but the petit jury was not administered an additional oath after it was empaneled. The Alabama Supreme Court characterized this as a defective-oath situation, not a no-oath-at-all situation, and recognized that `"any defect in the administration of the oath"' is reversible error only if `"some objection was taken ... during the progress of the trial, based on [that] defect,"' 721 So.2d at 244, quoting § 12-16-173, Ala. Code 1975. Because the appellant had not objected to the defect during trial, the Court held that the appellant's claim that his conviction was void because the petit jury had not been sworn had been waived. Similarly, this Court has held that claims that the venire was not sworn before voir dire examination are waivable, thus implicitly recognizing that such situations are also defective-oath situations and not no-oath-at-all situations. See, e.g., Fortner v. State, 825 So.2d 876 (Ala.Crim.App.2001); Bryant v. State, 739 So.2d 1138 (Ala. Crim.App.1998); and Sumlin v. State, 710 So.2d 941 (Ala.Crim.App.1998). Because *430 only nonjurisdictional issues can be waived, see, e.g., Mitchell v. State, 777 So.2d 312 (Ala.Crim.App.2000), it is clear that any claim based on a defect in an oath is nonjurisdictional and, therefore, is subject to the procedural bars in Rule 32.2. On the other hand, a claim that no oath was administered at all  i.e., the jury venire and the petit jury were not sworn  would be a jurisdictional issue because, as noted above, a verdict rendered by jurors who have never been sworn is a nullity."
845 So.2d at 850-51 (some emphasis added; footnotes omitted). The Court of Criminal Appeals in Brooks correctly concluded that there is a difference between a claim that the trial court failed to administer the oath to both the venire and the petit jury  a jurisdictional claim  and a claim that the trial court failed to administer the oath to either the venire or the petit jury  neither of which alone is a jurisdictional claim.
Applying the law to the facts of the case before us, we conclude that, even if the trial court did not administer the oath to the venire before voir dire began, the record clearly reflects that the trial court administered the oath to the petit jury that was selected to try the case. Therefore, unless one of the parties objected to the failure to swear in the venire, that error is waived. There is no indication in the record that either party objected.
We next examine whether the defendants could have waived the failure to qualify the jury venire generally, regardless of whether the veniremembers were under oath at the time. Our caselaw clearly holds that when a trial court fails to ask the jury veniremembers questions covering their qualifications, as prescribed by § 12-16-60(a), Ala.Code 1975, and no party does so, any party later asserting that an otherwise unqualified person served on the jury will be deemed to have waived the error, for want of due diligence. Keibler-Thompson Corp. v. Steading, 907 So.2d 435 (Ala.2005); Ex parte Toyota Motor Corp., 684 So.2d 132 (Ala.1996); Noble Trucking Co. v. Payne, 664 So.2d 202 (Ala. 1995); Holland v. Brandenberg, 627 So.2d 867 (Ala.1993); and McBride v. Sheppard, 624 So.2d 1069 (Ala.1993). In this regard, the parties are held to have a "duty to assist the trial court during voir dire in identifying and removing disqualified persons from the jury pool" and must "exercise due diligence in fulfilling [that] duty." Ex parte Toyota Motor Corp., 684 So.2d at 137. There is no waiver as to a particular ground of disqualification when the trial court, in the presence of counsel, asks a "specific and understandable" question concerning the statutory qualification and the juror, who would otherwise be disqualified, fails to answer so as to reveal the disqualification. Id. at 136. See also Keibler-Thompson Corp. and Noble Trucking Co. On the other hand, where the trial court fails to conduct a "qualifications" voir dire in the presence of the attorneys and the attorneys thereafter fail to conduct their own voir dire to ask the jurors about their qualifications, any lack of qualifications is waived. Keibler-Thompson Corp.; Ex parte Toyota Motor Corp.; Noble Trucking Co.; Holland; and McBride.
In face of defects that are waivable and that were indeed waived in this case by the absence of objection or could have been waived if Benford and Sales had been willing to do so on proper inquiry, there can be no manifest necessity that warrants a mistrial in this case, and the trial court exceeded its discretion in declaring the mistrial.
We therefore conclude that the defendants are entitled to a writ of mandamus directing the trial court to enter an order dismissing the charges against them on *431 the ground that jeopardy had attached at the time the trial court declared the mistrial and a second trial would violate the constitutional prohibition against double jeopardy.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, HARWOOD, WOODALL, and PARKER, JJ., concur.
NABERS, C.J., and STUART, SMITH, and BOLIN, JJ., dissent.
STUART, Justice (dissenting).
I respectfully dissent. I do not believe that the trial judge exceeded the scope of her discretion when she declared a mistrial and subsequently refused to dismiss the charges against the defendants. We have limited materials before us on this petition for a writ of mandamus because the meeting in chambers was not recorded and the defendants did not submit affidavits to support their allegations. As evidenced by her affidavit, the trial judge determined based on the facts before her that the jurors were not properly qualified and that a manifest necessity existed to declare a mistrial. After reviewing the facts properly before us, I cannot conclude that the trial judge exceeded the scope of her discretion.
As the main opinion recognizes, Art. I, § 9, Constitution of Alabama of 1901, clearly provides "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb; but courts may, for reasons fixed by law, discharge juries from the consideration of any case, and no person shall gain an advantage by reason of such discharge of the jury." Because I believe that the trial judge properly exercised her discretion, I believe today's decision to dismiss the charges against the defendants improperly allows the defendants to "gain an advantage" prohibited by our Constitution.
BOLIN, J., concurs.
NOTES
[1] It is well settled in federal jurisprudence that if a defendant does not timely and explicitly object to a trial court's sua sponte declaration of a mistrial, the defendant will be deemed to have impliedly consented to the mistrial, and a retrial will not violate double-jeopardy principles. See, e.g., United States v. Palmer, 122 F.3d 215 (5th Cir.1997); United States v. Nichols, 977 F.2d 972 (5th Cir. 1992); United States v. Puleo, 817 F.2d 702 (11th Cir.1987). These cases were all decided upon the defendant's appeal of his or her conviction and sentence with the benefit of a full record, a circumstance that is not present in the case before us.
[2] In Tarver v. State, 500 So.2d 1232 (Ala. Crim.App.1986), the Court of Criminal Appeals discussed the principles governing the administration of an oath to petit jurors:

"[T]here are numerous cases concerning the administration of the oath to petit juries as required by § 12-16-170, Code of Alabama, 1975. These cases indicate that a presumption cannot be made from a silent record that the jury was sworn. Whitehurst v. State, 51 Ala.App. 613, 288 So.2d 152, cert. denied, 292 Ala. 758, 288 So.2d 160 (1973). There must be some affirmative showing in the record that the oath to the jury was administered. Gardner v. State, 48 Ala. 263 (1872); Lacey v. State, 58 Ala. 385 (1877)."
500 So.2d at 1241-42 (footnote omitted).
[3] Effective August 1, 2002, that period is one year.