LYONS, Justice.
Warren Smith, Edward Croft, John Berg, Michael Lazarus, and Randall Haines, a group of directors of Just For Feet, Inc. (“the outside directors”), petition this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order directing the outside directors to produce to Charles Goldstein, the bankruptcy trustee for Just For Feet, Inc., documents containing what the outside directors contend are privileged communications between the outside directors and the law firm of Skadden, Arps, Slate, Meagher & Flom (“the Skadden law firm”).

I. Facts and Procedural History

On November 4, 1999, in the United States Bankruptcy Court for the District of Delaware, Just For Feet, Inc. (“JFF”), and its subsidiaries filed for protection under Chapter 11 of the United States Bankruptcy Code. The proceedings were ultimately converted to a Chapter 7 liquidation. On November 2, 2001, Goldstein, the Chapter 7 bankruptcy trustee for JFF and its subsidiaries (“the trustee”), sued JFF’s outside auditors and several of JFF’s officers and directors, including Harold Ruttenberg, in the Jefferson Circuit Court, alleging fraud, negligence, breach of contract, civil conspiracy, and breach of fiduciary duty. The trustee also alleged that the outside directors breached their fiduciary duties to JFF by failing to timely insist that JFF file for reorganization under Chapter 11 of the Bankruptcy Code, which would have, according to the trustee, prevented additional losses and provided JFF with a chance to survive bankruptcy as a profitable company.
In August 2003, the trustee served the outside directors with requests for production of documents constituting, referring, or relating to communications between the outside directors and the Skadden law firm. On September 3, 2003, the outside directors responded that the documents sought were protected by the attorney-client privilege. The outside directors rely upon an engagement letter sent by the Skadden law firm to the outside directors dated June 17, 1999; that letter provides:
“We are pleased that you as outside directors (the ‘Outside Directors’) of Just For Feet, Inc. (the ‘Company’) have decided to engage [the Skadden law firm] to assist you in your review of various matters relative to the Company.
[[Image here]]
“... The Company will be responsible for fees, charges and disbursements.
[[Image here]]
“Our representation of the Outside Directors is premised on the Firm’s adherence to its professional obligation not to disclose any confidential information or to use it for another party’s benefit without the Outside Director’s consent....
“Although each of the Outside Directors understands that he has the right to retain separate counsel, each of them also believes that a joint represen *358 tation is currently the most appropriate option for them.
[[Image here]]
“With respect to the Company and its subsidiaries and parties affiliated with the Outside Directors generally, it is our understanding that the [Skadden law firm] is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, the Company, its subsidiaries, any such affiliated party or any Outside Director in his individual capacity and will not be expected to do so unless the [Skadden law firm] has been asked and has specifically agreed to do so.
[[Image here]]
“It is our understanding that this Engagement Letter will be discussed and, if satisfactory, approved at a forthcoming meeting of the directors of the Company.”
(Emphasis added.) JFF paid the legal fees charged by the Skadden law firm in connection with the services it performed pursuant to the engagement letter. The outside directors contend that the letter shows that the attorney-client relationship existed between the outside directors and the Skadden law firm, not between JFF and the Skadden law firm.
On or around December 16, 2005, the trustee filed a motion to compel the outside directors to produce the requested documents, arguing that the attorney-client privilege belonged to JFF, not the outside directors, and that a trustee in bankruptcy has the authority to waive the privilege on behalf of the bankrupt company. The trial court granted the trustee’s motion to compel, stating: “[T]he attorney-client privilege regarding documents generated as between the [outside directors] and [the Skadden law firm] belongs to [JFF] and the trustee.” The outside directors filed the instant petition for the writ of mandamus, requesting this Court to direct the trial court to vacate its order granting the trustee’s motion to compel and to enter a protective order providing that the documents the trustee seeks are protected by an attorney-client privilege between the outside directors and the Skadden law firm, which is not waiva-ble by the trustee.
The outside directors contend in their mandamus petition that it is undisputed that JFF’s full board of directors knew of the terms of the above-quoted engagement letter and that the board never objected to the allegedly separate attorney-client relationship between the Skadden law firm and the outside directors. The trustee does not dispute that contention in his answer to the mandamus petition; we therefore take it to be true. See Ex parte Benford, 935 So.2d 421, 426 (Ala.2006) (“In Ex parte Turner, 840 So.2d 132, 134-35 (Ala.2002), we stated that the respondent’s ‘failure to respond to the allegations in [the] petition for a writ of mandamus compels this Court to consider the averments of fact in [the] petition as true.’ ”).

II. Standard of Review

“Mandamus is an extraordinary remedy requiring a showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Finerty, 611 So.2d 1063 (Ala.1993); Ex parte Alfab, Inc., 586 So.2d 889 (Ala.1991).
“Further, this Court has stated:
“ ‘The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The *359 right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful.’
“Ex parte Bozeman, 420 So.2d 89, 91 (Ala.1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98 at 102 (Ala.1981)); also quoted in Ex parte Finerty, 611 So.2d at 1064.”
Ex parte McDuffie, 624 So.2d 1063, 1064 (Ala.1993).

III. Analysis

A.

The outside directors do not dispute that, if the attorney-client relationship existed exclusively between the Skadden law firm and JFF, rather than between the Skadden law firm and the outside directors, then the attorney-client privilege belonged to JFF, and the trustee would have the authority to waive the privilege. See, generally, Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 358, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (“[T]he trustee of a corporation in bankruptcy has the power to waive the corporation’s attorney-client privilege with respect to prebankruptcy communications.”). Rather, the outside directors argue that JFF and the Skadden law firm never created an attorney-client relationship. They contend that the Skadden law firm’s engagement letter to the outside directors, combined with JFF’s acquiescence in the terms of that letter, shows that the only attorney-client relationship that existed was between the Skadden law firm and the outside directors. The trustee, on the other hand, argues that the outside directors, in seeking counsel from the Skadden law firm, were really acting in their capacities as representatives of JFF and that the attorney-client relationship therefore existed between the Skadden law firm and JFF. Accordingly, the trustee argues that he has the authority to waive the attorney-client privilege on JFF’s behalf.
The trustee argues that “company directors seeking legal counsel regarding company-related matters act on behalf of the corporation and any attorney-client privilege attached to those communications thus belongs to the company.” (Trustee’s answer at 14.) The trustee cites In re Bevill, Bresler, & Schulman Asset Management Corp., 805 F.2d 120 (3d Cir.1986). In Bevill, officers of bankrupt companies sought to prevent the bankruptcy trustee from waiving what the officers argued was their personal attorney-client privilege regarding communications between those officers and corporate counsel. The United States Court of Appeals for the Third Circuit addressed “the relationship between a corporation’s waiver of its privilege and the individual directors’ assertion of a claim of personal attorney-client privilege with respect to counsel consulted on both a personal and corporate basis after the counsel has been retained by the corporation.” 805 F.2d at 124 (emphasis added; footnote omitted). Of course, in the instant case, the outside directors allege that JFF never retained the Skadden law firm as its corporate counsel. Rather, they argue that the Skadden law firm was the outside directors’ personal counsel.
In any event, Bevill, which involved undisputedly corporate counsel, recognized that “an individual officer may have an individual claim of attorney-client privilege with regard to communications [even] with corporate counsel.” 805 F.2d at 125. The court approved of the test the district court had applied in determining whether an individual officer can assert a personal claim of attorney-client privilege with regard to communications with corporate counsel:
*360 “ ‘First, [the officers] must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.’ ”
805 F.2d at 123 (emphasis added). As noted, the engagement letter the Skadden law firm sent to the outside directors provided in part: “We are pleased that you as outside directors ... of Just For Feet, Inc. ... have decided to engage [the Skadden law firm] to assist you in your review of various matters relative to [JFF].” (Emphasis added.) The trustee also points to invoices the Skadden law firm sent to JFF for services rendered pursuant to the engagement letter, which describe services that could be considered to have been performed for JFF, not for the outside directors.[1] The trustee argues that the outside directors cannot assert a privilege between themselves and the Skadden law firm because the engagement letter and invoices show that the substance of their communications with the Skadden law firm concerned matters “within the company or the general affairs of the company.” However, we find persuasive the reading of the fifth prong of the test recognized in Bevill given by the United States Court of Appeals for the First Circuit:
“With respect to the final prong [of the Bevill test], the government claims that all of [the corporate officers’] communications were within the orbit of [the corporation’s] general affairs, and therefore could not be individually privileged. In the government’s view, Bevill precludes a finding of individual representation with respect to matters — such as the grand jury investigation into the rebate program — that involve the corporation. We do not read Bevill so grudgingly. As the Tenth Circuit explained:
“ ‘The fifth prong of In Matter of Bevill, properly interpreted, only precludes an officer from asserting an individual attorney client privilege when the communication concerns the corporation’s rights and responsibilities. However, if the communication between a corporate officer and corporate counsel specifically focuses upon the individual officer’s personal rights and liabilities, then the fifth prong of In Matter of Bevill can be satisfied even though the general subject matter of the conversation pertains to matters within the general affairs of the company.’ ”
In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir.2001) (quoting Grand Jury Proceedings v. United States, 156 F.3d 1038, 1041 (10th Cir.1998)). Certainly, if a corporate officer or director can have a personal attorney-client privilege with regard to communications with corporate *361 counsel concerning the general affairs of the company, then directors and officers can have their own personal outside counsel and their communications with counsel regarding their personal rights and liabilities will be privileged, even though those communications pertain to matters relating to the affairs of the company. We hold that the outside directors and the Skadden law firm were free to form their own attorney-client relationship, to which JFF was not a party, regarding the directors’ individual personal rights and liabilities stemming from “various matters relative to the Company.” The invoices, together with the other evidence before us, are not sufficient to justify the conclusion that all of the outside directors’ communications with the Skadden law firm fall outside their attorney-client privilege, notwithstanding the engagement letter. Accordingly, the trial court erred in finding that the attorney-client privilege belonged exclusively to JFF and not to the outside directors.
The trustee argues that, even if the outside directors had an attorney-client relationship with the Skadden law firm, any attorney-client privilege covering their communications should not apply as against the trustee. The trustee cites Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970), which, according to the trustee, recognized a “fiduciary duty” exception to the attorney-client privilege. The trustee reads Gamer and its progeny to stand for the rule that communications between an attorney and a client are not privileged from those to whom the client owes a fiduciary duty. Because, according to the trustee, a corporate director owes a fiduciary duty to the corporation, that director cannot assert the attorney-client privilege against the corporation, and, in turn, against the corporation’s bankruptcy trustee. However, in Gamer, the corporation, not the directors, held the privilege as to communications between the corporation and its counsel. The court in Gamer held that the corporation could not assert a privilege against stockholders suing the corporation and its officers and directors for alleged violations of securities laws and asserting fraud claims, and against stockholders suing individual defendants on behalf of the corporation in a derivative action. The court’s decision was based on the fact that the corporation, which held the privilege, acted ultimately for the benefit of the shareholders, who sought to pierce that privilege. Here, while the outside directors in their capacity as representatives of JFF act for the ultimate benefit of JFF, we have already determined that the outside directors can have their own counsel with which to discuss their individual personal rights and liabilities. Therefore, we conclude that Gamer is not dispositive.

B.

The outside directors’ objection to the trustee’s request for documents was general and did not provide a description of the substance of the documents that rendered those documents privileged. Rule 26(b)(5), Ala. R. Civ. P., was added to the Alabama Rules of Civil Procedure effective August 1, 2004. That rule provides:
“Claims of Privilege or Protection of Trial-Preparation Materials. When a party withholds information otherwise discoverable under these rules on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and, upon written request by any other party, shall be supported by a description of the nature of the documents, communications, or things not produced sufficient to enable the demanding party to contest the claim. This supporting description shall be served within twenty- *362 one (21) days of the date a request is served, unless otherwise ordered.”
(Emphasis added.) However, we note that, in September 2003, when the outside directors refused to provide the trustee with the documents he sought, Rule 26(b)(5) had not yet been promulgated.[2] Of course, the amended rule was available for proceedings in this action subsequent to the date of promulgation. As far as appears from the materials before us, the trustee has not availed itself of its right to obtain additional information pursuant to Rule 26(b)(5). Without more specific information as to the subject matter of the documents in question, we are unable to address the extent to which, if any, materials being withheld under the invocation of the attorney-client privilege might be subject to production.

IV. Conclusion

We issue the writ of mandamus and direct the trial court to vacate its order granting the trustee’s motion to compel and further direct the trial court to grant the outside directors’ motion for a protective order. We decline to consider, at this juncture, the extent to which circumstances might exist that would justify modification of the protective order should additional information be made available sufficient to permit the trustee to contest the claim of attorney-client privilege.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.

. According to the trustee, the invoices indicate that the Skadden law firm provided services to the outside directors "in connection with the company's recent operational difficulties, including the reporting thereof in the company's securities exchange registration statement on Form S-4 and the company's quarterly report on Form 10-Q,” and, according to the trustee, other services "relating to the general affairs of the Company.” (Trustee's answer at 19.)

. We note that, at the time the outside directors refused to provide (he documents, the language contained in Rule 26(b)(5) did appear in Rule 45(d)(2), Ala. R. Civ. P., which deals with discovery from nonparties.